## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REAGAN COX and MARIAH SPERRY
on behalf of themselves and all others similarly
situated,

|  |  |
|---|---|
| Plaintiffs, | Case No.: |
| v. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

ZENNI HOLDINGS, LLC
Z CAPITAL GROUP, LLC;
Z CAPITAL MANAGEMENT, LLC;
Z CAPITAL PARTNERS, LLC;
Z CAPITAL PARTNERS GP II, L.P.
Z CAPITAL PARTNERS II-A, L.P.;
Z CAPITAL PARTNERS II-B, L.P.;
Z CAPITAL N-2L, L.L.C.;
Z CAPITAL N-2L-D, L.L.C.;
Z CAPITAL PARTNERS FUND HOLDINGS I,
L.L.C.;
Z CAPITAL PARTNERS II, L.P.
and
ZCG CONSULTING, LLC

                    Defendants.

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Reagan Cox and Mariah Sperry ("Plaintiffs") on behalf of themselves and a class of those similarly situated ("Other Similarly Situated Employees"), by way of Complaint against Zenni Holdings, LLC; Z Capital Group, LLC; Z Capital Management, LLC; Z Capital Partners, LLC; Z Capital Partners GP II, L.P.;  Z Capital Partners II-A, L.P.; Z Capital Partners II-B, L.P.; Z Capital N-2L, L.L.C.; Z Capital N-2L-D, L.L.C.; Z Capital Partners Fund Holdings I, L.L.C.; Z Capital Partners II, L.P. and ZCG Consulting, LLC ("Defendants") by and through their counsel allege as follows:

## NATURE OF THE ACTION

1. This is a class action for the recovery by Plaintiffs and Other Similarly Situated Employees of the Defendants, as a single employer, of damages in the amount of 60 days' pay and ERISA benefits by reason of Defendants' violation of the Plaintiffs' rights under the Worker Adjustment and Retraining Notification Act of 1988 29 U.S.C. §§ 2101-2109 *et. seq.* (the "WARN Act"). Although the Plaintiffs and the Other Similarly Situated Employees were nominally employed by Maple Mountain Enterprises, Inc. d/b/a Modere and Maple Mountain Group, Inc. d/b/a Modere (collectively "Maple Mountain"), pursuant to the WARN Act's single employer rule, Zenni Holdings, LLC; Z Capital Group, LLC; Z Capital Management, LLC; Z Capital Partners, LLC; ; Z Capital Partners GP II, L.P.; Z Capital Partners II-A, L.P.; Z Capital Partners II-B, L.P.; Z Capital N-2L, L.L.C.; Z Capital N-2L-D, L.L.C.; Z Capital Partners Fund Holdings I, L.L.C.; Z Capital Partners II, L.P. and ZCG Consulting, LLC (collectively "Z Capital") were also the Plaintiffs' and the Other Similarly Situated Employees "Employer" until they were terminated as part of, or as a result of a Mass Layoff or Mass Layoffs and/or a Plant Closing ordered by Defendants on or about April 11, 2025 and thereafter. The Defendants violated the WARN Act by failing to give the Plaintiffs and the Other Similarly Situated Employees of the Defendants at least 60 days' advance written notice of termination, as required by the WARN Act. As a consequence, the Plaintiffs and the Other Similarly Situated Employees of the Defendants are entitled under the WARN Act to recover from the Defendants their wages and ERISA benefits for 60 days, none of which has been paid.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).

3. Venue in this Court is proper pursuant to 29 U.S.C § 2104 (a)(5).

## THE PARTIES

4.      Upon information and belief Maple Mountain had facilities located at 530 S 2000 W, Springville, UT 84663 (the "Springville Facility") and 180 N University Ave, Provo, Utah 84601, (the "Provo Facility" and collectively with the Springville Facility, the "Facilities").

5.      Defendants are all Delaware corporations.

6.      Defendants operated and controlled Maple Mountain.

7.      At all relevant times, Defendants each jointly maintained, owned and operated the Facilities.

8.      At all relevant times to this action, Plaintiff Reagan Cox was an employee who was employed by Defendants as a single employer and worked at or reported to the Springfield Facility beginning from September 1997, until her termination without cause on or about April 11, 2025.

9.      At all relevant times to this action, Plaintiff Mariah Sperry was an employee who was employed by Defendants as a single employer and worked at or reported to the Provo Facility beginning from October 1997, until her termination without cause on or about April 11, 2025.

10.     Until on or about April 11, 2025, Plaintiffs and all other similarly situated employees, were employed by Defendants as a single employer and worked at, or reported to, or were assigned work from the Facilities ("Other Similarly Situated Employees").

11.     On or about April 11, 2025 and thereafter, Defendants as a single employer ordered the termination of Plaintiffs' employment together with the termination of approximately 190 other employees who worked at or reported to or were assigned work from the Facilities as part of a mass layoff and/or plant closing as defined by the WARN Act, for which they were entitled to receive 60 days advance written notice under the WARN Act.

## <u>CLASS ACTION ALLEGATIONS – 29 U.S.C. § 2104 (a)(5)</u>

12.     Pursuant to the WARN Act, 29 U.S.C. § 2104 (a)(5), the Plaintiffs maintain this action on behalf of themselves and on behalf of each of the Other Similarly Situated Employees.

13.     Each of the Other Similarly Situated Employees is similarly situated to the Plaintiffs in respect to his or her rights under the WARN Act.

14.     Defendants, as a single employer, were required by the WARN Act to give the Plaintiffs and the Other Similarly Situated Employees at least 60 days advance written notice prior to their terminations.

15.     Prior to their terminations, neither the Plaintiffs nor the Other Similarly Situated Employees received written notice that complied with the requirements of the WARN Act.

16.     Defendants failed to pay the Plaintiffs and the Other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) days following their respective terminations and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

## CLASS ACTION ALLEGATIONS RULES 23 (a) and (b)

17.      The Plaintiffs bring this action on their own behalf and, pursuant to the Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the Other Similarly Situated Employees who worked at the Facilities and were terminated as part of or as the reasonably foreseeable result of a Mass Layoff and/or a Plant Closing ordered by the Defendants, as a single employer, on or about April 11, 2025 and thereafter ("the "Class").

18.     The persons in the Class identified above ("Class Members") are so numerous that joinder of all Class Members is impracticable.

19.     There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members.

20.     The claims of the representative parties are typical of the claims of the Class.

21.     The representative parties will fairly and adequately protect the interests of the class.

22.     The Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

23.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of WARN Act litigation, where individual Plaintiffs and Class Members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

24.     There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

   (a)     Whether the Class Members were employees of the Defendants who worked at or reported to the Facilities;

   (b)     Whether Defendants, as a single employer, terminated the employment of the Class Members without cause on their part and without giving them 60 days advance written notice;

   (c)     Whether the Defendants may rely on the WARN Act's "unforeseeable business circumstances" defense.

   (d)     Whether Defendants failure to provide 60 days' notice should render them liable to the Class Members for 60 days' pay and benefits.

   (e)     Whether the Defendants constituted a "single employer" as defined by the WARN Act.

### CAUSE OF ACTION & CLAIM FOR RELIEF:
### VIOLATION OF THE WARN ACT, 29 U.S.C. §§ 2101, *et. seq.*

25.     At all relevant times, the Defendants, as a "single employer" employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act and employed more than 50 employees at each Facility.

26.     At all relevant times, each of the Defendants was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) of the WARN Act and 20 C.F.R. § 639.3(a).

## SINGLE EMPLOYER ALLEGATIONS

27.    The Defendants constituted a "single employer" of the Plaintiffs and the Class

Members in that, among other things:

***Common Ownership***

(a)    James J. Zenni, Jr. ("Mr. Zenni") is the sole member of Zenni Holdings,

LLC and the sole creator of the Zenni Family 2018 GST Trust (collectively, "Parent

Entities").

(b)    The Parent Entities own Z Capital Group, LLC..

(c)    Z Capital Group, LLC owns Z Capital Partners, LLC.

(d)    Z Capital Group, LLC and Zenni Holdings, LLC own Z Capital

Management, LLC and Z Capital Partners GP II, L.P.

(e)    Z Capital Management, LLC is the W-2 entity that houses the employees

of Z Capital and reports earnings of Z Capital employees to the IRS.

(f)    Z Capital Partners, LLC and  Z Capital Partners GP II, L.P. own Z Capital

Partners II-A, L.P.; Z Capital Partners II-B, L.P.; Z Capital N-2L, L.L.C.; Z Capital

N-2L-D, L.L.C.; Z Capital Partners Fund Holdings I, L.L.C.; Z Capital Partners II,

L.P. and ZCG Consulting, LLC.

(g)    Z Capital N-2L, L.L.C.; Z Capital N-2L-D, L.L.C.; Z Capital Partners Fund

Holdings I, L.L.C.; Z Capital Partners, II-B, L.P.; Z Capital Partners II, L.P. and Z

Capital Partners II-A, L.P all own Maple Mountain.

(h)    Z Capital invests in companies through Delaware limited partnerships

("Funds") that are formed to hold pooled capital from Z Capital's investors who are

the limited partners in these investment partnerships.

*(i)*    Matthew Kane, ("Kane") as COO of Z Capital Group, LLC described in a sworn declaration, that "Affiliates of Z Capital which are all under the common ownership of Z Capital Group, LLC and similarly under the common control of the Parent Entities, serve as the General Partner of the Funds and retain sole authority and control of the Funds' ownership of investments."

*(j)*    Kane continued by stating "Z Capital manages and controls the investments made in companies through the Funds".

*(k)*    Kane concluded by saying that the affiliates "are under the common control of Z Capital (through intermediaries) and the Z Capital entities are under the common control of the Parent Entities." In other words, Z Capital and the affiliates are under the common control of the Parent Entities.

**Common Directors and Officers**

*(l)*    Plaintiffs reallege and incorporate by reference all allegations in the proceeding paragraphs.

*(m)*    Mr. Zenni is the Managing Director and/or Chief Executive Officer of Maple Mountain and each of the Defendants where he is responsible for all portfolio management and business operations.

*(n)*    Brad Oates is a Board Member at Maple Mountain and the Trustee of the Zenni Family 2018 GST Trust (one of the Parent Entities).

**Dependency of Operations**

*(o)*    Plaintiffs reallege and incorporate by reference all allegations in the proceeding paragraphs.

(p)    Upon information and belief, at all relevant times, there was a dependency of operations between and among Maple Mountain  and all Defendants in that there was sharing of administrative and purchasing services and comingled finances.

(q)    Specifically, Haptiq LLC ("Haptiq", formerly known as Webonise US, LLC ("Webonise")), and a subsidiary of Z Capital, is a global technology product development and digital solutions company that builds essential enterprise technology for businesses.

(r)    In September 2023, George Russell, Board Member at Z Capital communicated to Maple Mountain that it (Maple Mountain) is "required to take every opportunity to work through Webonise" as its technology consultant.

(s)    In December 2024, Erik Kreutzer, CCO and general counsel at Z Capital sent an email to Maple Mountain (as well all of the Z Capital portfolio companies) informing them that henceforth, any technology contract with an aggregate value of $10,000 or greater requires the high-level assessment and review by the Haptiq team.

(t)    In January 2025, when Maple Mountain required additional technology services, Z Capital required Maple Mountain to use the services of its affiliate, Haptiq.

(u)    Additionally, Maple Mountain and all Defendants were dependent on Z Capital Group, LLC and Zenni Holdings, LLC for its daily operating funds, which were provided either directly by Z Capital Group, LLC or through financing arranged by Z Capital Group, LLC.

(v)    Furthermore, Maple Mountain and all of the Defendants had comingled finances.  For example, Z Capital took out a loan on behalf of Maple Mountain but did not use all of the funds for Maple Mountain.

**Unity of Personnel Policies**

*(w)*    Plaintiffs reallege and incorporate by reference all allegations in the proceeding paragraphs.

*(x)*    Upon information and belief, at all relevant times Maple Mountain and all of the Defendants maintained common personnel policies which were put into place by Z Capital.

*(y)*    Specifically, before an employee was hired by Maple Mountain, Maple Mountain was required to submit a "new hire offer request" to Jon Davies, Managing Director-Head of Talent at Z Capital ("Davies") who signed the request with the title "ZCG HR"; and to Mr. Zenni at his email address of jzenni@zcg.com.

*(z)*    Examples of these new hire offer requests by Maple Mountain that required approval of Davies and Mr. Zenni in January-March 2025 were: Director of Global Events; Sr. Director, IT Operations; Global Client Partnership Principal; Supply Chain Analyst Digital Marketing Manager (JP); Events Manager; Sanitation Technician Director, Global Events; Director, Digital Marketing & CX; VP of Global Compliance; Senior Video Producer & Editor; Chief Legal Officer and Marketing Communications Specialist

*(aa)*    Additionally, in March 2025, Jeff Wooding, Managing Director-Head of Strategic Finance at Z Capital, implemented a "total" hiring freeze at Maple Mountain.

*(bb)*    Upon information and belief, at all relevant times, all of the Maple Mountain  benefits plans, health insurance plans and 401(k) plans were implemented and carried out by Z Capital.

*(cc)*    Specifically, in February 2025, Paula Gentile, Managing Director-Head of Insurance & Risk Management, communicated to Maple Mountain that no insurance

plans or benefit plans should be purchased, renewed or canceled without prior consultation with and approval by Z Capital.

(dd)  Upon information and belief, at all relevant times, management-level personnel decisions relating to Maple Mountain were made by Z Capital.

(ee)  Specifically, in November 2023, Glenn Walsh, Partner-Head of Talent Acquisition and Analysis at Z Capital, hired Nate Frazier as President of Maple Mountain.

(ff)  Upon information and belief, the decision to order a Mass Layoff or Mass Layoffs and/or Plant Closings at Maple Mountain without providing a WARN notice was made by Z Capital.

**De Facto Control**

(gg)  Plaintiffs reallege and incorporate by reference all allegations in the proceeding paragraphs.

(hh)  As shown in Kane's sworn declaration, Z Capital maintained sole control over all critical business decisions made on behalf of Maple Mountain. This would have included decisions relating to Plaintiffs' and the Class's employment. and the decision to shut down the Facilities without providing WARN notice.

(ii)  Specifically, on April 8, 2025, Nate Frazier, President of Maple Mountain called a board meeting to be held on April 9, 2025 to discuss the cash shortfall of Maple Mountain and to appoint a "Special Committee".

(jj)  On April 9, 2025, a board meeting was held, comprised of the three members of Maple Mountain-Mr. Zenni (meeting invite sent to his email address of jzenni@zcg.com), Brad Oates and Nate Frazier.

    *(kk)* The purpose of the appointment of the Special Committee was to attempt to insulate Z Capital from liability pertaining to the layoff of employees without notice by creating another layer between Z Capital and Maple Mountain.

    *(ll)* At the meeting, Mr. Zenni informed the other members that Z Capital will no longer be funding Maple Mountain and directed the Special Committee to terminate all of the employees.

    *(mm)* The sole member of the Special Committee was Brad Oates.

    *(nn)* Upon information and belief, the decision to shut down the Facilities without providing proper WARN notice was made by Z Capital on behalf of Maple Mountain, as a single employer.

28.    On or about April 11, 2025 and thereafter, Defendants, as a single employer with Maple Mountain, ordered a Mass Layoff and/or a Plant Closing of the Facilities as those terms are defined by 29 U.S.C. § 2101(a).

29.    The Plaintiffs and the Class Members who were terminated by Defendants as a result of Defendants ordering a Mass Layoff and/or a Plant Closing at the Facilities on or about April 11, 2025, and thereafter, were "affected employees" as defined by 29 U.S.C. § 2101(a)(5) of the WARN Act.

30.    The mass layoff or mass layoffs and/or plant closing at the Facilities resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Defendants' employees at each Facility as well as 33% of Defendant's workforce at each Facility, excluding "part-time employees," as that term is defined by the WARN Act.

31.    The Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

32.     Pursuant to Sections 2102 of WARN and 20 C.F.R. § 639.1 - § 639.10 *et. seq.*, Defendants, as a single employer, were required to provide at least 60 days prior written notice of the termination or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days prior notice was not given.

33.     The Plaintiffs and each of the Class Members were not provided at least sixty (60) days prior written notice of their terminations, nor were they provided written notice prior to their terminations setting forth the basis for reduced notice as required by the WARN Act.

34.     Defendants failed to provide at least sixty (60) days prior written notice to the Class Members terminations and also failed to provide notice prior to their terminations setting forth the basis for reduced notice as required by the WARN Act.

35.     The Defendants failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

36.     As a result of Defendants' failure to pay the wages, benefits and other monies as asserted above, the Aggrieved Employees were damaged in an amount equal to the sum of the Class Members unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the members' terminations.

## JURY DEMAND

37.     On behalf of themselves and a class of Other Similarly Situated Employees, Plaintiffs demands a trial by jury in this case.

**WHEREFORE**, the Plaintiffs and Class Members demand judgment against the Defendants as follows:

a.  An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act;

b.  Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C §2104(a)(5), Plaintiffs and the Class Members constitute a single class;

c.  Interest as allowed by law on the amounts owed under the preceding paragraphs;

d.  Appointment of the undersigned attorneys as Class Counsel;

e.  Appointment of Plaintiffs as the Class Representatives and payment of reasonable compensation for their services as such;

f.  The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. §2104(a)(6); and

g.  Such other and further relief as this Court may deem just and proper.

Dated: August 4, 2025

By: /s/ James E. Huggett
**MARGOLIS EDELSTEIN**
James E. Huggett (#3956)
300 Delaware Avenue
Suite 800
Wilmington, DE 19801
Phone 302-888-1112
Fax 302-888-1119

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122

**THE GARDNER FIRM, P.C.**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181

Cooperating Counsel for
THE SUGAR LAW CENTER FOR ECONOMIC &
SOCIAL JUSTICE, a non-profit law firm


*Attorneys for Plaintiffs*