**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

REAGAN COX, et al.,

        Plaintiffs,

   v.

ZENNI HOLDINGS, LLC, et al.,

        Defendants

C.A. No. 25-973-JLH

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

**SMITH KATZENSTEIN & JENKINS LLP**
David A. Jenkins (No. 932)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
daj@skjlaw.com
dat@skjlaw.com

**AMINI LLC**
Avery Samet
Charles Wollman
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 497-8278
asamet@aminillc.com
cwollman@aminillc.com

*Attorneys for Defendants*

Dated: November 3, 2025

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

SUMMARY OF ARGUMENT .................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 2

    A. Parties and Corporate Structure ..................................................................... 2

    B. Operations Relationship Between Maple Mountain and "Z Capital" .................... 3

    C. Layoff Event ................................................................................................. 5

LEGAL STANDARD ............................................................................................... 6

ARGUMENT ......................................................................................................... 6

    I.    THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR "SINGLE
        EMPLOYER" LIABILITY UNDER THE WARN ACT ...................................... 6

        A.   The Third Circuit's Five-Factor Test Requires Facts Showing a High Degree of
            Routine Integration and Control of Business Operations ................................. 6

        B.   The Lack of Defendant-Specific Allegations Mandates Dismissal ................... 8

        C.   The Complaint's Pervasive "Information and Belief" Allegations Are Insufficient to
            State a Claim. .......................................................................................... 9

        D.   Application of the Five-Factor Test to the Alleged Facts Mandates Dismissal ........... 10

           1.   The Complaint Does Not Allege Common Ownership for Half the Defendants ...... 11

           2.   The Complaint Does Not Allege Common Directorship ......................... 12

           3.   The Complaint Does Not Allege De Facto Control ................................... 13

           4.   The Complaint Does Not Allege Unity of Personnel Policies ................... 16

           5.   The Complaint Does Not Allege a Dependency of Operations ............... 18

    II.  AT MINIMUM, DISMISSAL IS WARRANTED AS TO ALL ENTITIES FOR
       WHICH PLAINTIFFS PLEAD NOTHING BEYOND COMMON OWNERSHIP
       AND DIRECTORS ...................................................................................... 20

CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 6

*Bocker v. Hartzell Engine Techs., LLC*,
   C.A. No. 21-1174-MN-CJB, 2023 WL 415792 (D. Del. Jan. 26, 2023) ................................. 11

*In re DHP Holdings II Corp.*,
   447 B.R. 418 (Bankr. D. Del. 2010) ................................................................ 19

*Espinosa v. PCH Communications, LLC*,
   No. 15-24561-CIV-WILLIAMS, 2016 WL 11783304 (S.D. Fla. Sept. 20, 2016) ..................... 9

*In re AFA Inv., Inc.*,
   No. 12-11127-MFW, 2012 WL 6544945 (Bankr. D. Del. Dec. 14, 2012) .......................... 7, 20

*In re APA Transport Corp. Consol. Litig.*,
   541 F.3d 233 (3d Cir. 2008) ................................................................ *passim*

*In Re Consol. Bedding, Inc.*,
   432 B.R. 115 (Bankr. D. Del. 2010) ........................................................ *passim*

*In re HMR Foods Holding, LP*,
   602 B.R. 855 (Bankr. D. Del. 2019) ........................................................ *passim*

*In re JC USA, Inc.*,
   No. 23-10585-JKS, 2025 WL 2354184 (Bankr. D. Del. Aug. 13, 2025) .......................... 8–9

*In re Jevic Holding Corp.*,
   526 B.R. 547 (D. Del. 2014) .............................................................. 7, 15, 17

*In re Jevic Holding Corp.*,
   492 B.R. 416 (Bankr. D. Del. 2013) ............................................................... 18

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ....................................................................... 9

*McDermott v. Clondalkin Grp., Inc.*,
   649 F. App'x 263 (3d Cir. 2016) .............................................................. 9–10

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir. 2001) ........................................................................... *passim*

*Polk 33 Lending, LLC v. Schwartz*,
    555 F. Supp. 3d 38 (D. Del. 2021) ........................................................................... 13

*Sierra Est. of Romagosa v. Trafigura Trading LLC*,
    No. 22-366-JLH-CJB, 2024 WL 4104130 (D. Del. Sept. 6, 2024) ........................... 9

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*,
    C.A. No. 16-581-RGA-MPT, 2017 WL 896988 (D. Del. Mar. 7, 2017) .................... 8

*Woolery v. Matlin Patterson Glob. Advisers, LLC*,
    C.A. No. 12-726-RGA, 2013 WL 1750429 (D. Del. Apr. 23, 2013) ........................... 12, 16, 19

**Statutes**

29 U.S.C. § 2101 ........................................................................................................... 1

**Rules & Regulations**

20 C.F.R. § 639.3(a)(2) ........................................................................................... 10–11

Federal Rule of Civil Procedure 8 ........................................................................... 1, 8

Federal Rule of Civil Procedure 12 ......................................................................... 1, 6

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Reagan Cox and Mariah Sperry, on behalf of themselves and all others similarly situated ("Plaintiffs"), filed a class action Complaint on August 4, 2025, against Defendants Zenni Holdings, LLC; Z Capital Group, LLC; Z Capital Management, LLC; Z Capital Partners, LLC; Z Capital Partners GP II, LP; Z Capital Partners II-A, LP; Z Capital Partners II-B, LP; Z Capital N-2L, LLC; Z Capital N-2L-D, LLC; Z Capital Partners Fund Holdings I, LLC; Z Capital Partners II, LP and ZCG Consulting, LLC (collectively, "Defendants") for violation of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 et seq., based on "single employer" liability. (D.I. 1) Defendants now move to dismiss the Complaint and respectfully submit this opening brief in support of their motion to dismiss.

## SUMMARY OF ARGUMENT

1.      The Complaint should be dismissed under Rule 8. Plaintiffs impermissibly lump a dozen distinct entities together, attributing all conduct to undifferentiated "Defendants" or "Z Capital" without specifying what any particular defendant did.

2.      The Complaint should be dismissed under Rule 12(b)(6). Plaintiffs do not allege facts showing that any defendant, let alone each of them, was Plaintiffs' "employer" under the WARN Act. However, the Third Circuit's "single employer" test requires more than the existence of a relationship between a private equity firm and a portfolio company. Plaintiffs must plead a high degree of integration with the employer on a day-to-day basis. This requires more than Plaintiffs' allegations of some employee oversight together with allegations pled only "upon information and belief" of "commingling," "dependency" and "common personnel policies," without supporting factual content.  Plaintiffs must also plead de facto control over the mass layoffs. This requires more than Plaintiffs alleging that the head of the portfolio company who ordered the layoffs also heads the private equity firm. These insufficiencies mandate dismissal.

## STATEMENT OF FACTS

### A. Parties and Corporate Structure

Plaintiffs allege they were employed by Maple Mountain Enterprises, Inc. d/b/a Modere and Maple Mountain Group, Inc. d/b/a Modere (together, "Maple Mountain"). (D.I. 1, ¶ 1) Plaintiffs allege their employment was terminated as part of a mass layoff on or about April 11, 2025, without the proper employee notice required by the WARN Act. (*Id.*)

On April 21, 2025, Plaintiffs filed a complaint for violation of the WARN Act against Maple Mountain in the federal district court of Utah. (Declaration of Daniel A. Taylor ("Taylor Decl."), Exhibit 1) That complaint omits any reference to "Z Capital," alleging only that Maple Mountain "ordered" the mass layoff. (*Id.*, ¶¶ 1, 8–9, 15, 25) Maple Mountain filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 2, 2025. (Taylor Decl., Ex. 2) Two months later, Plaintiffs filed the Complaint against the Defendants.

Plaintiffs name as defendants eleven separate "Z Capital" entities and Zenni Holdings, LLC ("Zenni Holdings"), contending those entities were a WARN Act "single employer" with Maple Mountain. (D.I. 1, ¶ 1) The Complaint refers to all twelve defendants as "Z Capital" (*id.*) and refers only to "Z Capital" or "Defendants" for all its allegations about Defendants, without attributing the allegations to any specific defendant. Apart from its allegations of the ownership structure of Defendants and Maple Mountain, the Complaint contains just one defendant-specific allegation (*id.*, ¶ 27(u)), which concerns defendant Z Capital Group, LLC ("Z Capital Group").

The Complaint alleges that "Z Capital" is a private equity firm and Maple Mountain is one of its portfolio companies. In alleging the investment structure, the Complaint (*id.*, ¶ 27(a–k)) relies on and quotes a declaration by Matthew Kane in an unrelated litigation, (Taylor Decl., Ex. 3). Kane describes defendant Z Capital Group as an "alternative asset manager" and defendant Z Capital Partners, LLC ("Z Capital Partners") as Z Capital Group's "private equity arm." (*Id.*, ¶ 5) Kane

names Zenni Holdings and a family trust (alleged in the Complaint to be nonparty Zenni Family 2018 GST Trust) as Z Capital Group's owners. (*Id.*, ¶ 4)

Kane explains the structure of "Z Capital," which Kane defines as only Z Capital Group and Z Capital Partners, not all the Defendants. (*Id.*, ¶ 3) According to Kane, "Z Capital invests in companies through Delaware limited partnerships (which I refer to herein as the 'Funds') that are formed to hold pooled capital from Z Capital's investors, who are the limited partners in these investment partnerships." (*Id.*, ¶ 6) "Affiliates of Z Capital, which are all under the common ownership of Z Capital Group, LLC…serve as the General Partner of the Funds and retain sole authority and control over the Funds' ownership of investments." (*Id.*, ¶ 7) "Z Capital manages and controls the investments made in companies through the Funds." (*Id.*, ¶ 9) The Complaint quotes Kane's statements near-verbatim. (D.I. 1, ¶ 27*(h)–(k)*)

The Complaint alleges that six of the defendant entities are the Funds that own Maple Mountain, the portfolio company at issue here. (*Id.*, ¶ 27*(g)*) (naming entities Z Capital N-2L, LLC; Z Capital N-2L-D, LLC; Z Capital Partners Fund Holdings I, LLC; Z Capital Partners, II-B, LP; Z Capital Partners II, LP; and Z Capital Partners II-A, LP)) None of the Funds are alleged to hold a controlling interest in Maple Mountain. The Complaint does not identify the "General Partner of the Funds" here but lists only one "GP" as a defendant, Z Capital Partners GP II, LP.

The Complaint alleges that James Zenni is the "Managing Director and/or Chief Executive Officer" of Maple Mountain and each of the Defendants. (*Id.*, ¶ 27*(m)*) The Complaint alleges that Brad Oates is a Maple Mountain board member and the trustee of nonparty Zenni Family 2018 GST Trust. (*Id.*, ¶ 27*(n)*)

### B. Operations Relationship Between Maple Mountain and "Z Capital"

The Complaint alleges that "[u]pon information and belief, at all relevant times, there was a dependency of operations between and among Maple Mountain and all Defendants in that there

was sharing of administrative and purchasing services and comingled finances." (*Id.*, ¶ 27(p)) The Complaint identifies no shared "administrative and purchasing services." Instead, the Complaint bases this "belief" on the alleged facts that: (1) on three occasions "Z Capital" instructed Maple Mountain to use a "subsidiary of Z Capital" as a "technology consultant" (*id.*, ¶ 27(q)–(t)), and (2) Z Capital Group provided Maple Mountain with its "daily operating funds . . . either directly . . . or through financing arranged by Z Capital Group," (*id.*, ¶ 27(u)).

The Complaint also claims that "Maple Mountain and all of the Defendants had comingled finances" because allegedly "Z Capital took out a loan on behalf of Maple Mountain but did not use all of the funds for Maple Mountain." (*Id.*, ¶ 27(v)) The Complaint does not explain what it means that there was a loan was "on behalf of" Maple Mountain. The Complaint also alleges no specifics about the loan, including any information related to the loan's date, amount, or lender (or which "Z Capital" entity allegedly "took out" the loan).

In its 2025 bankruptcy filing, Maple Mountain identifies the entity Cerberus Business Finance Agency LLC as its only secured creditor, in the amount of $169.5 million owed since June 6, 2021. (Taylor Decl., Ex. 2 at 14 of 101) Maple Mountain states that the entity is not an "insider" or "related party" of Maple Mountain. (*Id.*) The only "Z Capital" entities listed as unsecured creditors are Z Capital Group ($1.2 million) and Z Capital Management, LLC ($45,000). (*Id.* at 75 of 101) Both debts are for "Goods & Services" provided to Maple Mountain. (*Id.*)

The Complaint further alleges that, "upon information and belief, at all relevant times Maple Mountain and all of the Defendants maintained common personnel policies which were put into place by Z Capital." (D.I. 1, ¶ 27(x)) The Complaint identifies no common personnel policies. The Complaint alleges only that, a month before the alleged mass termination occurred due to an

alleged "cash shortfall" (*id.*, ¶ 27*(ii)*), the "Managing Director-Head of Strategic Finance at Z Capital . . . implemented a 'total' hiring freeze" at Maple Mountain. (*Id.*, ¶ 27*(aa)*)

The Complaint alleges that "upon information and belief, management-level personnel decisions relating to Maple Mountain were made by Z Capital." (*Id.*, ¶ 27*(dd)*) The only facts alleged are that "before an employee was hired by Maple Mountain, Maple Mountain was required to submit a 'new hire offer request'" to the "Managing Director-Head of Talent at Z Capital" and Mr. Zenni. (*Id.*, ¶ 27*(y)*) The new hire offer requests named in the Complaint are for senior and management-level hiring positions. (*Id.*, ¶ 27*(z)*) The Complaint does not allege that "Z Capital" otherwise participated in Maple Mountain's personnel hiring process or that "Z Capital" ever denied a hiring request. The only employee allegedly hired by "Z Capital" was Maple Mountain's President, Nate Frazier. (*Id.*, ¶ 27*(ee)*)

The Complaint alleges that, "upon information and belief, at all relevant times, all of the Maple Mountain benefits plans, health insurance plans and 401(k) plans were implemented and carried out by Z Capital." (*Id.*, ¶ 27*(bb)*) However, the only fact alleged relating to these plans is that Maple Mountain was told that "no insurance plans or benefit plans should be purchased, renewed or canceled without prior consultation with and approval by Z Capital" (*id.*, ¶ 27*(cc)*), suggesting that such plans were not "implemented and carried out by Z Capital."

## C. Layoff Event

The Complaint alleges that "on April 8, 2025, Nate Frazier, President of Maple Mountain called a board meeting to be held on April 9, 2025 to discuss the cash shortfall of Maple Mountain and to appoint a 'Special Committee.'" (*Id.*, ¶ 27*(ii)*) The Complaint alleges that the April 9 board meeting was comprised of Mr. Frazier together with the two other alleged Maple Mountain board members, Mr. Zenni and Mr. Oates, and that Mr. Oates was appointed as the sole member of a newly formed Special Committee. (*Id.*, ¶ 27*(jj–ll)*)

The Complaint alleges that, at the meeting, Mr. Zenni "informed the other members that Z Capital will no longer be funding Maple Mountain." (*Id.*) He then "directed the Special Committee to terminate all of the employees." (*Id.*) At the time, Mr. Zenni was allegedly Maple Mountain's "Managing Director and/or Chief Executive Officer." ((*Id.*, ¶ 27*(m)*) There is no allegation that Mr. Zenni was not authorized to direct the termination or that he acted specifically on behalf of any "Z Capital" entity when he did so. Yet, the Complaint alleges, "[u]pon information and belief, the decision to shut down the Facilities without providing proper WARN notice was made by Z Capital on behalf of Maple Mountain, as a single employer." (*Id.*, ¶ 27*(nn)*)

## **LEGAL STANDARD**

To survive Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007)). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663. Further, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. A complaint must "nudge [] claims . . . across the line from conceivable to plausible." *Id.* at 680.

## **ARGUMENT**

## I. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR "SINGLE EMPLOYER" LIABILITY UNDER THE WARN ACT

### A. The Third Circuit's Five-Factor Test Requires Facts Showing a High Degree of Routine Integration and Control of Business Operations

The WARN Act generally imposes liability only on the direct employer of affected employees. However, in limited circumstances, courts may treat affiliated entities as a "single employer" for WARN Act purposes. The Third Circuit has emphasized that this doctrine is the

exception, not the rule, for parent-affiliate relationships, rejecting "the imposition of liability merely as a result of the control ordinarily exercised by a parent corporation over a subsidiary by virtue of its ownership." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 490 (3d Cir. 2001). "Such a result would cause a type of liability that is not only at odds with the purpose of limited liability in general, but also would be inconsistent with the 'existing legal rules' regarding parental liability that the Department of Labor would have courts apply." *Id.* (citations omitted).

Rather, "affiliated corporate liability under the WARN Act is ultimately an inquiry into whether the two nominally separate entities operated at arm's length" or whether the parent had become "so entangled with [the affiliate's] affairs so as to engender WARN Act liability." *Pearson*, 247 F.3d at 492, 495; *In re APA Transport Corp. Consol. Litig.*, 541 F.3d 233, 243, 244 (3d Cir. 2008); *see also In re Jevic Holding Corp.*, 526 B.R. 547, 552 (D. Del. 2014) (citation omitted) (explaining that liability is imposed only where the separate companies "are not what they appear to be, [and] in truth they are but divisions or departments of a single enterprise"), *aff'd*, 656 F. App'x 617 (3d Cir. 2016).

Delaware courts regularly dismiss WARN Act claims under Rule 12(b)(6) where the complaint fails to plausibly allege facts supporting a claim for single employer liability. *See, e.g., In re HMR Foods Holding, LP*, 602 B.R. 855 (Bankr. D. Del. 2019); *In Re Consol. Bedding, Inc.*, 432 B.R. 115 (Bankr. D. Del. 2010); *In re AFA Inv., Inc.*, No. 12-11127 MFW, 2012 WL 6544945 (Bankr. D. Del. Dec. 14, 2012). These courts also specifically held that having a private equity firm's directors serve on its portfolio company's board and make the layoffs decision does not state a claim for single-employer liability, even where the Complaint alleges, without supporting facts, that those directors acted on behalf of the private equity firm.

**B.  The Lack of Defendant-Specific Allegations Mandates Dismissal**

Federal Rule of Civil Procedure 8 requires that each defendant receive fair notice of the claim and the grounds upon which it rests. "[P]laintiffs cannot combine allegations against multiple defendants" *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581-RGA-MPT, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017), because "particular defendants may not be adequately apprised of the conduct they are alleged to have engaged in," *In re JC USA, Inc.*, No. 23-10585-JKS, 2025 WL 2354184, at *6 (Bankr. D. Del. Aug. 13, 2025) (citation omitted).

Here, the Complaint fails to allege single-employer liability because it is devoid of defendant-specific facts. Plaintiffs define "Z Capital" to include twelve distinct entities and then attribute virtually all alleged conduct to "Z Capital" or "Defendants" collectively, including the core allegation that "Defendants, as a single employer, ordered the termination" and "failed to provide WARN notice." (D.I. 1, ¶¶ 1, 11, 17, 27*(nn)*, 28, 34) With one exception (*id.*, ¶ 27*(u)*), the Complaint does not allege which specific entity took which action, who at any specific entity made any decision, or how any defendant exercised authority over Maple Mountain's workforce. And allegations of common ownership and directors, even if defendant-specific, are insufficient for single-employer liability, as explained *infra* (Section I.C.).

Such collective-style pleading makes it impossible to know which allegations are intended to support Plaintiffs' claims against each defendant. This undifferentiated pleading is especially problematic in the context of the complex investment and holding company structure alleged here—various "Z Capital" entities with different roles in a private equity structure and different owners—where "single employer" liability under the WARN Act depends on a defendant-specific analysis of the relationship between the employer and each defendant entity.

Indeed, courts have dismissed WARN Act claims based on single employer liability for the same group pleading problem found in the Complaint. *See JC USA, Inc.*, 2025 WL 2354184, at

*6–7 (Delaware bankruptcy court dismissing California WARN Act claim due to complaint's group pleading); *Espinosa v. PCH Communications, LLC*, Case No. 15-24561-CIV-WILLIAMS, 2016 WL 11783304, at *2–3 (S.D. Fla. Sept. 20, 2016) (holding that WARN Act allegations "failed to satisfy" Rules 8(a) and 12(b)(6) because court was unable to "distinguish which allegations and claims are directed towards each Defendant").

Furthermore, there are no allegations here of alter ego or veil-piercing. Even if the Complaint had adequately alleged single employer liability as to one defendant entity, that would not impose direct, single-employer liability on that entity's owners or affiliates.

### C.  The Complaint's Pervasive "Information and Belief" Allegations Are Insufficient to State a Claim.

Even if Plaintiffs were permitted to cure their impermissible group pleading by repleading their allegations to refer to one specific defendant, these allegations would fail to state a plausible claim for WARN Act "single employer" liability under controlling law.

Critical elements of Plaintiffs' theory are pled "upon information and belief." (D.I. 1, ¶¶ 27*(p)*, *(u)–(v)*, *(bb)*, *(dd)*, *(ff)*, *(nn)*) Allegations made on "information and belief" are permitted only where the facts are "peculiarly within the defendant's knowledge or control" and, even then, must be supported by "*factual allegations that make their theoretically viable claim plausible*"—the plaintiff may not simply put forward "*boilerplate and conclusory allegations*." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–268 (3d Cir. 2016) (emphasis in original) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)); *see also Sierra Est. of Romagosa v. Trafigura Trading LLC*, C.A. No. 22-366-JLH-CJB, 2024 WL 4104130, at *9 (D. Del. Sept. 6, 2024) (emphasis in original) (citing *McDermott* to reject a complaint's assertion on "information and belief" where the complaint "d[id] not plead any *actual underlying facts* that would help render it plausible that this assertion is correct").

9

At most, Plaintiffs' allegations offer only the veneer of specificity. Plaintiffs provide extensive allegations that do not pertain to the case yet rely on "information and belief" to address critical gaps in their claim for single-employer liability against Defendants. Plaintiffs allege specific statements and actions (D.I. 1, ¶ 27*(ii)–(ll)*) from a three-person Maple Mountain board meeting deciding the mass termination—even details of the email addresses receiving the "meeting invite." However, Plaintiffs make only the conclusory allegation that, "*[u]pon information and belief*, the decision to shut down the Facilities without providing proper WARN notice was made by Z Capital *on behalf of* Maple Mountain, *as a single employer*." (*Id.*, ¶ 27*(nn)* (emphasis added)) Plaintiffs allege quotes from private communications over a two-year period between Maple Mountain and alleged directors, officers and board members of "Z Capital" (*id.*, ¶ 27*(r)–(t)*, *(aa)*, *(cc)*); but Plaintiffs fail to identify any "administrative and purchasing services" shared between the companies, (*id.*, ¶ 27*(p)*). Plaintiffs allege details about ten specific "new hire offer request" forms (*id.*, ¶ 27*(y)–(z)*); but Plaintiffs fail to identify any "common personnel policies" between the companies, (*id.*, ¶ 27*(x)*).

The Third Circuit requires factual enhancement to support such allegations; naked, belief-based conclusions are insufficient. *McDermott*, 649 F. App'x at 267–68. Plaintiffs offer no specifics to render their beliefs plausible. Especially where Plaintiffs provide detailed facts about emails, meetings, and named individuals for other topics, their reliance on belief-based conclusions for the elements that matter most underscores the deficiency here.

### D.  Application of the Five-Factor Test to the Alleged Facts Mandates Dismissal

The Department of Labor ("DOL") has promulgated a five-factor balancing test to guide courts in determining whether two or more entities should be treated as a single employer: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control,

"(iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. § 639.3(a)(2).

The Third Circuit has adopted these factors as the governing standard. *Pearson*, 247 F.3d at 477–78. However, the factors are not balanced equally: "the first and second factors, common ownership and common directors and/or officers, are not sufficient to establish that two entities are a 'single employer.'" *APA Transport*, 541 F.3d at 243 (citing *Pearson*, 247 F.3d at 494).

Based on *Pearson*'s five-factor test, the Complaint fails to allege that any defendant should be treated as a "single employer" with Maple Mountain under the WARN Act.

> *1.  The Complaint Does Not Allege Common Ownership for Half the Defendants*

The Complaint plausibly alleges common ownership for only the six defendant Funds, but not the remaining six defendants. The Complaint, and the underlying Kane declaration quoted and relied on in the Complaint, describe the "Z Capital" entities as operating in a typical private equity structure: certain investors are the equity shareholders of Maple Mountain, namely the Funds, while Z Capital Group and Z Capital Partners are only the managers of that investment. (D.I. 1, ¶ 27*(h)–(j)*) In other words, the Funds—and Maple Mountain—are owned by the investors, not by Z Capital Group and Z Capital Partners. Thus, the Complaint fails to allege common ownership for defendants Z Capital Group and Z Capital Partners.

Likewise, the Complaint fails to allege common ownership for Zenni Holdings, an alleged Z Capital Group owner, and for Z Capital Partners GP II, LP, an alleged Z Capital Group subsidiary, since they too do not own the Funds or Maple Mountain.

While the Complaint alleges that these various defendant entities are the great-grandparent, grandparent and parent owners of the Funds (*id.*, ¶ 27*(f)–(g)*), "[w]here a plaintiff's own pleading is internally inconsistent and contradictory, the court is not obligated to reconcile or accept such contradictory allegations." *Bocker v. Hartzell Engine Techs., LLC*, C.A. No. 21-1174-MN-CJB,

2023 WL 415792, at *4 (D. Del. Jan. 26, 2023) (footnote omitted). Here, the Complaint contradictorily identifies these entities as both the Funds' manager and owner.

Furthermore, for the remaining two defendants, ZCG Consulting, LLC, and Z Capital Management, LLC, there is no allegation that they own Maple Mountain, even indirectly. In fact, the latter entity is identified as an HR/payroll entity, not a business owner. (D.I. 1, ¶ 27*(e)*)

When applying the DOL factors for WARN act liability, "particular attention must be paid to any lack of an ownership interest between the two corporations." *Pearson*, 247 F.3d at 496. "[S]uch a lack must be weighed heavily against a finding of liability for the affiliated corporation." *Id.* Because the Complaint fails to plausibly plead "common ownership" for six of the defendants, the Court should dismiss the claims against those defendants on this basis alone.

### 2. *The Complaint Does Not Allege Common Directorship*

Plaintiffs allege a single overlapping director/officer, Mr. Zenni, between Defendants and Maple Mountain. (D.I. 1, ¶ 27*(m)*) Delaware courts have held that, even on a motion to dismiss, "the presence of only a single overlapping individual with overlapping management roles between the companies is not sufficient" for this factor. *Woolery v. Matlin Patterson Glob. Advisers, LLC*, No. CA 12-726-RGA, 2013 WL 1750429, at *5 (D. Del. Apr. 23, 2013).

Mr. Oates is not alleged to hold a leadership position at any of the Defendants. (D.I. 1, ¶ 27*(n)*) He is allegedly trustee of a nonparty trust that owns an unspecified amount of Z Capital Group—not Maple Mountain. There is no allegation that the nonparty trust or Mr. Oates has any management function at Z Capital Group or any "Z Capital" entity. This does not show "common" leadership, as required to satisfy this factor of the DOL test. *See Pearson*, 247 F.3d at 498 (holding that this factor looks to whether the companies have the "same" officers or directors).

Furthermore, in the case of the Funds, the allegation that Mr. Zenni held a management position is implausible given that the Funds have no management functions.

Therefore, the Complaint lacks sufficient allegations to support this factor.

### 3. *The Complaint Does Not Allege De Facto Control*

De facto control exists only when it can be demonstrated that the parent "was the decisionmaker responsible for the employment practice giving rise to the litigation." *Pearson*, 247 F.3d at 503–04; *APA Transport*, 541 F.3d at 245; *see also Pearson*, 247 F.3d at 491. Here, the Complaint offers no more than a conclusory, legal, and "belief"-based allegation that the decision "was made by Z Capital on behalf of Maple Mountain, as a single employer" (D.I. 1, ¶ 31*(nn)*), unaccompanied by specific supporting facts. Such allegations are not entitled to an assumption of truth under federal pleading standards.[1] Because the Complaint fails to adequately allege that any "Z Capital" entity was the "decisionmaker" the Complaint fails to support this factor.

### i. Mr. Zenni's Overlapping Directorship Does Not Create Liability

The only facts alleged in the Complaint about the responsible decisionmaker are that, at a Maple Mountain board meeting, Maple Mountain's alleged Managing Director/CEO, Mr. Zenni, "directed the Special Committee to terminate all of the employees." (*Id.*, ¶ 27*(ll)*)

However, that Mr. Zenni allegedly held similar positions at the "Z Capital" entities at the time is insufficient to impute the alleged termination decision to non-employer affiliates and impose "single employer" liability. The Third Circuit has repeatedly cautioned that the de facto control factor "is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership." *Pearson*, 247 F.3d at 503; *see also id.* at 490.

Indeed, Delaware courts have specifically held that where the affiliate's board of directors is composed of principals and officers of the parent (or directors appointed by the parent), and the

---

[1] The Court can also take judicial notice of Plaintiffs' earlier pleading (Taylor Decl., Ex. 1) that it was Maple Mountain that "ordered" the termination. *See, e.g., Polk 33 Lending, LLC v. Schwartz*, 555 F. Supp. 3d 38, 41 n.1 (D. Del. 2021) (publicly-filed documents may properly be the subject of judicial notice for purposes of a 12(b)(6) motion to dismiss).

board decides to order the mass layoffs, that is insufficient to allege de facto control—even at the pleadings stage. For example, *In re HMR Foods* addressed whether the Arlon Defendants, private equity owners of portfolio company HMR, exercised de facto control under the WARN Act. 602 B.R. at 862, 873–75. Plaintiffs alleged that Arlon's principals and officers dominated HMR's board, directed executive decisions including facility shutdowns, and instructed layoffs not as HMR directors but as representatives of Arlon. *Id.* However, the court found these facts insufficient, stating that board membership and shareholder control alone do not establish de facto control or liability. *Id.* The court concluded there were no allegations showing the directors acted outside typical fiduciary duties or roles necessary to preserve business value. *Id.*

*In Re Consol. Bedding, Inc.,* is another example. The case involved allegations under the WARN Act against private equity firm American Capital and its portfolio company, Consolidated Bedding. Plaintiffs claimed American Capital employees, as directors, directed Consolidated Bedding to close facilities and declare bankruptcy. 432 B.R. at 122–24. However, the court dismissed the case, ruling that these facts did not show American Capital had de facto control, as plaintiffs failed to demonstrate the directors acted specifically on behalf of American Capital when making decisions for Consolidated Bedding. *Id.*

Here, the alleged direction by Mr. Zenni occurred at a Maple Mountain governance proceeding, by a Maple Mountain officer/director, concerning Maple Mountain's workforce. Like in *HMR Foods* and *Consolidated Bedding*, the Complaint fails to demonstrate that Mr. Zenni acted specifically on behalf of any "Z Capital" entity when making the decision for Maple Mountain. Under *Pearson* and its progeny, Mr. Zenni's alleged overlapping roles do not convert portfolio-company decisions into parent decisions and do not show de facto control.

ii.    <u>"Z Capital"'s Funding Decision Does Not Create Liability</u>

The Third Circuit has held that a company's decision to cease funding an employer-affiliate does not create de facto control of the WARN event, even where "[the employer-affiliate], unable to secure new financing, collapsed and shut down its operations without giving WARN Act notice." *Pearson*, 247 F.3d at 477. *See also Jevic Holding*, 526 B.R. at 553 ((no de facto control even where "[parent]'s "decision to withhold funding directly caused the closure" of affiliate because "the *Pearson* court cautions against using this type of 'natural and probable consequences' reasoning"). "The law is not so foolish as to fashion a rule – even under the laudable auspices of the WARN Act – that would prevent an equity investor from taking measures to protect or, if necessary, salvage its shareholders' stake in an investment going bad." *HMR Foods*, 602 B.R. at 875, n.122 (citation omitted) (factor not plausibly alleged where affiliate "could not continue its operations" because parent refused to continue funding, *id.* at 872).

Here, the Complaint suggests that the alleged mass layoffs occurred due to "Z Capital" allegedly deciding it "will no longer be funding Maple Mountain." (D.I. 1, ¶ 27*(ii)–(ll)*) However, based on established precedent, such an allegation would not show that Defendants exercised de facto control of the WARN event.

Additionally, the premise of the allegation —that Maple Mountain relied on Z Capital Group for its "daily operating funds (*id.*, ¶ 27*(u)*)—appears implausible. Maple Mountain's bankruptcy filing explains that Maple Mountain's financing was specifically not from Maple Mountain, (Taylor Decl. Ex. 2 at 14 of 101). Plaintiffs, apparently aware of the filing and attempting to plead around the known facts, allege that they are unsure whether any "Z Capital" entity "directly" funded Maple Mountain "or" instead only "arranged" for third-party financing.

iii.    The Kane Affidavit Does Not Show De Facto Control

The Complaint's reliance on the quoted statements from Matthew Kane is misplaced. The Complaint asserts that "[a]s shown in Kane's sworn declaration, Z Capital maintained sole control over all critical business decisions made on behalf of Maple Mountain." (D.I. 1, ¶ 27 *(hh)*) The Complaint does not offer any explanation for how Kane's declaration supports this assertion. Kane only describes a private equity structure in which "[a]ffiliates of Z Capital," rather than the Funds or the limited partners, manage the investments held by the Funds. (*Id.*, ¶ 27 *(i)–(k)*); Taylor Decl., Ex. 3, ¶¶ 6–9) The quoted statements do not describe a management or control relationship beyond a parent's exercise of control pursuant to the ordinary incidents of stock ownership, which is insufficient to establish de facto control.

Indeed, Kane submitted the declaration in an unrelated litigation from four years ago about a different portfolio company. His point there was only that certain "Z Capital" entities were "affiliates" of the portfolio company (and therefore the release language in the agreement at issue applied to those "Z Capital" entities). (*Id.*, ¶¶ 16–22)

4.    *The Complaint Does Not Allege Unity of Personnel Policies*

The "unity of personnel policies" factor is "targeted toward discerning whether the nominally separate corporations actually functioned as a single entity with respect to such policies on a ***regular, day-to-day basis***." *Pearson*, 247 F.3d at 490 (emphasis added). For this factor, the Complaint must allege facts showing that Maple Mountain and the Defendants "engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping." *APA Transport*, 541 F.3d at 245.

As an initial matter, courts have found that where the parent is an investment company and the affiliate is one of the companies in the parent's investment portfolio "it would make no sense" that the two companies would "share personnel policies" given that relationship. *Woolery*, 2013

WL 1750429, at *6; *Consol. Bedding,* 432 B.R. at 122. This is exactly the relationship alleged between "Z Capital" as private equity firm and Maple Mountain as a portfolio company (operating as a multi-level marketing company selling beauty products and dietary supplements). Sharing personnel policies cannot be reasonably inferred here given this relationship.

The Complaint also fails to identify any centralized personnel policies. *First*, the Complaint alleges that "Z Capital" had an approval role in Maple Mountain's senior hires and major changes to its insurance and benefits plans, and that "Z Capital" hired Maple Mountain's President. (D.I. 1, ¶ 27*(y)–(z)*, *(cc)*, *(ee)*) However, the Third Circuit and Delaware courts have held that a parent's employee "monitoring" of its affiliate and its hiring the affiliate's CEO, as the Complaint alleges here, is insufficient for this factor. *Pearson*, 247 F.3d at 499–500; *APA Transport*, 541 F.3d at 245; *HMR Foods,* 602 B.R. at 868–70; *Jevic Holding*, 526 B.R. at 554.

*Second*, the Complaint alleges, "upon information and belief" only, that "Maple Mountain and all of the Defendants maintained common personnel policies which were put into place by Z Capital" and that "all of the Maple Mountain benefits plans, health insurance plans and 401(k) plans were implemented and carried out by Z Capital." (D.I. 1, ¶ 27*(x)*, *(bb)*) No facts are alleged that support this belief-based conclusion; in fact, the alleged facts contradict it. If personnel policies and benefit plans were "implemented and carried out by Z Capital," then "Z Capital" would not be "approving" Maple Mountain's senior hires and major changes to its insurance and benefits plans; "Z Capital" would be implementing those policies itself. These allegations certainly do not show that the companies "functioned as a single entity with respect to such policies." *Pearson*, 247 F.3d at 490.

*Third*, the Complaint alleges that "Z Capital" "implemented a 'total' hiring freeze at Maple Mountain" in March 2025. (D.I. 1, ¶ 27*(aa)*) This also fails to support a finding of "unity of

personnel policies." The Complaint alleges that this freeze occurred just one month before the company ordered mass terminations due to its cashflow problem. As in *HMR Foods*, such allegations "concern discrete employment issues in a special, or even crisis, situation. They do not allege facts concerning [Maple Mountain]'s day-to-day operations." 602 B.R. at 870 (factor not met where parent instructed affiliate to reduce personnel after affiliate had a major business loss).

*Fourth*, the Complaint repeats in its "unity of personnel policies" allegations the conclusory allegation that "Z Capital" ordered the mass termination. (D.I. 1, ¶ *27(ff)*) However, the issue of who ordered the termination is "more appropriately considered as part of the 'de facto exercise of control' factor." *Pearson*, 247 F.3d at 500.

Therefore, the Complaint lacks sufficient allegations to support this factor.

### 5.   *The Complaint Does Not Allege a Dependency of Operations*

For the 'dependency of operations' factor, Plaintiffs must show the "existence of arrangements such as the sharing of administrative or purchasing services, interchanges of employees or equipment, and commingled finances." *APA Transport*, 541 F.3d at 245 (quoting *Pearson*, 247 F.3d at 500); *see also In re Jevic Holding Corp.*, 492 B.R. 416, 432 (Bankr. D. Del. 2013), *aff'd*, 526 B.R. 547 (D. Del. 2014), *aff'd*, 656 F. App'x 617 (3d Cir. 2016) (factor not met where the affiliate "maintained separate books and records, had its own bank accounts, and prepared its own financial statements.").

Here, the Complaint fails to allege any such facts. *First*, the allegation that "Z Capital" allegedly directed Maple Mountain to use a "Z Capital" affiliate as a technology consultant (D.I. 1 ¶ 27*(q)–(t)*) bears no relationship to the arrangements considered this factor. Nor does this allegation indicate that Maple Mountain relied on this affiliate (or any of the Defendants) for the ordinary operation of its day-to-day business, even though this factor "by its nature, looks to the daily functioning of the two companies." *Pearson*, 247 F.3d at 501.

*Second*, the Complaint's allegation, "upon information and belief," that Maple Mountain and the Defendants "com[m]ingled finances" lacks supporting factual allegations. (D.I. 1, ¶¶ 27*(p)*, 27*(v)*) The Complaint alleges only that "Z Capital took out a loan on behalf of Maple Mountain but did not use all of the funds for Maple Mountain." The Complaint provides no further detail about the loan or an explanation of how the alleged loan was "on behalf of" Maple Mountain; if "Z Capital" took out this unidentified loan, then it is not "commingling" for "Z Capital" to control those funds. (*Id.*, ¶ 27*(v)*) Such threadbare allegations are insufficient.

*Third*, the allegation (D.I. 1, ¶ 27*(u)*) that Maple Mountain was "dependent" on "Z Capital Group" for its "daily operating funds," even if coherently pled (it is not, *see supra* at 15), is insufficient. The Third Circuit has repeatedly held that a company funding an affiliate through "arm's length transactions" does not show the dependency contemplated by this factor. *Pearson*, 247 F.3d at 503; *APA Transport*, 541 F.3d at 245. This is so even when the affiliate is "financially dependent on the [] loans, and ultimately was unable to stay afloat without them." *Pearson*, 247 F.3d at 503; *see also HMR Foods*, 602 B.R. at 872 (holding same on a motion to dismiss).

*Fourth*, like the "unity of personnel policies" factor, a "dependency of operations" between "Z Capital" as a private equity firm and Maple Mountain as one of its now-bankrupt portfolio companies cannot be reasonably inferred from the allegations because it "defies logic and common sense." *Woolery*, 2013 WL 1750429, at *6. Similarly, courts have held that the factor is not met where the parent "was an investment company without any operations other than managing its investments . . . [and] continued operations after the [affiliate] shut down." *In re DHP Holdings II Corp.*, 447 B.R. 418, 425 (Bankr. D. Del. 2010); *see also APA Transport*, 541 F.3d at 245 (two companies "were clearly not 'dependent' upon one another to continue operation, and there is no stronger evidence for this fact than that [the parent] continued to operate without incident after [the

19

affiliate] folded"). Here, the Complaint admits that "Z Capital" is an investment company with multiple portfolio companies. Given this relationship and the Complaint's unsupported allegations, the Complaint lacks sufficient allegations to support this factor.

## II.  AT MINIMUM, DISMISSAL IS WARRANTED AS TO ALL ENTITIES FOR WHICH PLAINTIFFS PLEAD NOTHING BEYOND COMMON OWNERSHIP AND DIRECTORS

Even if some allegations were construed to target a particular "Z Capital" entity, the Complaint does not tie the remaining defendants—the six Funds, an HR/payroll entity, and holding companies—to any alleged WARN decision or to the DOL factors beyond common ownership and officers. Nor is it plausible, based on the allegations, that these entities had any management role in the portfolio-company operations of a private equity firm. The Complaint admits as much in the case of the HR/payroll entity and the Funds. (*Id.*, ¶ 27*(e)*, *(h)–(j)*)

*Pearson* holds that such allegations—common ownership, corporate family relationships, overlapping leadership—do not, without more, state a WARN single-employer claim. 247 F.3d at 494 ("ownership—and even ownership coupled with common management—is not a sufficient basis for liability"); *see also APA Transp.*, 541 F.3d at 243 (reaffirming *Pearson*'s approach). Even at the motion to dismiss stage, Delaware courts dismiss claims for WARN Act single employer liability for failure to plead more than these two DOL factors. *Consol. Bedding*, 432 B.R. at 123, n.4; *HMR Foods*, 602 B.R. at 868; *AFA Inv.*, 2012 WL 6544945, *4.

<u>CONCLUSION</u>

For the foregoing reasons, the Complaint fails to state a claim under the WARN Act against the Defendants. The Court should dismiss the Complaint with prejudice under Rule 12(b)(6). In the alternative, the Court should dismiss as to all defendants for whom Plaintiffs allege only ownership or investment relationships and require Plaintiffs to file a more definite statement specifying the allegedly wrongful conduct of any remaining defendant.

Dated: November 3, 2025

**SMITH KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
David A. Jenkins (No. 932)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
daj@skjlaw.com
dat@skjlaw.com

**AMINI LLC**
Avery Samet
Charles Wollman
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 497-8278
asamet@aminillc.com
cwollman@aminillc.com

*Attorneys for Defendants*