IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REAGAN COX, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>ZENNI HOLDINGS, LLC, et al.,<br><br>   Defendants | C.A. No. 25-973-JLH |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) (D.I. 20)**

                  **SMITH KATZENSTEIN & JENKINS LLP**
                  David A. Jenkins (No. 932)
                  Daniel A. Taylor (No. 6934)
                  1000 N. West Street, Suite 1501
                  Wilmington, DE 19801
                  (302) 652-8400
                  daj@skjlaw.com
                  dat@skjlaw.com

                  **AMINI LLC**
                  Avery Samet
                  Charles Wollman
                  131 West 35th Street, 12th Floor
                  New York, New York 10001
                  (212) 497-8278
                  asamet@aminillc.com
                  cwollman@aminillc.com

                  *Attorneys for Defendants*

Dated: December 10, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

SUMMARY OF ARGUMENT ......................................................................................................... 1

ARGUMENT ..................................................................................................................................... 2

    I.   A Parent's Controlling Ownership Does Not Plausibly Infer Liability ............................... 2

    II.  Single Employer Liability Is Not Imposed on Affiliates of a Single Employer ................. 3

    III. Mr. Zenni's Overlapping Directorship Does Not Plausibly Infer Liability ......................... 6

    IV. The Complaint Is Fatally Insufficient Under the Five-Factor Test ...................................... 7

    V.  Plaintiffs' Alternative Request for Permission to Replead Should be Denied ................... 10

CONCLUSION ................................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 7

*Chaney v. Vt. Bread Co.*,
  No. 2:21-cv-120, 2023 U.S. Dist. LEXIS 148066 (D. Vt. Aug. 23, 2023) ............................... 6

*Garner v. Behrman Bros. IV, LLC*,
  260 F. Supp. 3d 369 (S.D.N.Y. 2017) ..................................................................................... 5

*Guippone v. BH S&B Holdings LLC,*
  737 F.3d 221 (2d Cir. 2013) .................................................................................................... 3

*Guippone v. BH S&B Holdings LLC*,
  No. 09-cv-1029 CM, 2010 WL 2077189 (S.D.N.Y. May 18, 2010) ....................................... 3

*In re AFA Inv., Inc.*,
  No. 12-11127 MFW, 2012 WL 6544945 (Bankr. D. Del. Dec. 14, 2012) ........................... 3, 8

*In re APA Transport*,
  541 F.3d 233 (3d Cir. 2008) .................................................................................................... 9

*In Re Consol. Bedding, Inc.*,
  432 B.R. 115 (Bankr. D. Del. 2010) ................................................................................... 3, 8

*In re HMR Foods Holding, LP*,
  602 B.R. 855 (Bankr. D. Del. 2019) ................................................................................... 3, 6

*Jones v. ABN Amro Mortg. Grp., Inc.*,
  606 F.3d 119 (3d Cir. 2010) .................................................................................................. 10

*Kanter v. Barella*,
  489 F.3d 170 (3d Cir. 2007) .................................................................................................. 10

*King ex rel. Cephalon Inc. v. Baldino*,
  409 F. App'x 535 (3d Cir. 2010) ........................................................................................... 10

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001) ........................................................................................... 2, 8, 9

*Smith v. Pallman*,
  420 F. App'x 208 (3d Cir. 2011) ............................................................................................. 7

*Woolery v. Matlin Patterson Glob. Advisers, LLC*,
  C.A. No. 12-726-RGA, 2013 WL 1750429 (D. Del. Apr. 23, 2013) ...................................... 9

## SUMMARY OF ARGUMENT

Defendants have moved to dismiss the Complaint with prejudice under Rules 8 and 12(b)(6) (D.I. 20), and respond herein to the arguments in Plaintiffs' answering brief (D.I. 25).

1. Plaintiffs worked for and were laid off without WARN notice by Maple Mountain, a nonparty. This case is about holding twelve other entities liable based on their alleged ownership interest—but not managerial control—of Maple Mountain. To impose liability on Defendants under the limited exception of the "single employer" rule, Plaintiffs must allege *facts* from which it can be reasonably inferred that Defendants had a high degree of day-to-day control of and integration with Maple Mountain as understood by Delaware courts. According to those courts, including *HMR Foods*, *Consolidated Bedding*, and *AFA Investments*, it is insufficient and grounds for 12(b)(6) dismissal to plead that Defendants are a private equity firm and that the head of that firm, who was allegedly also a Maple Mountain board member, ordered the layoffs at a Maple Mountain board meeting. Notably, Plaintiffs do not even attempt to distinguish these cases. Likewise, Plaintiffs' boilerplate conclusions without supporting content do not meet federal pleading standards, even when Plaintiffs claim they need discovery to find facts supporting their claim. Plaintiffs' alternative request to replead must also be denied because Plaintiffs do not offer more or different allegations for such a repleading—because they have none.

2. The current allegations, all pled against undifferentiated defendant entities, must be dismissed for improper group pleading. At minimum, the Court should dismiss the claim against all those defendants for which, under the Complaint's own allegations, it is affirmatively *implausible* that they could ever be a "single employer." These include the passive "funds" with no management functions and the holding company that owns the asset manager. As a matter of law, alleging that an entity owned Maple Mountain and that they shared common management is insufficient to plausibly plead single employer liability.

# ARGUMENT[1]

## I.   A Parent's Controlling Ownership Does Not Plausibly Infer Liability

Plaintiffs fundamentally distort the single employer rule by confusing the rule's interest in a parent's day-to-day, pervasive control of its affiliate with a different form of control, that is a parent's legal, or de jure, control that arises from the parent's ownership of the affiliate. Rather, the Third Circuit in *Pearson* emphasized that the single employer rule is the exception, not the default, for parent-affiliate relationships and rejected "the imposition of liability merely as a result of the control ordinarily exercised by a parent corporation over a subsidiary by virtue of its ownership." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 490 (3d Cir. 2001). As *Pearson* observed, "[s]uch a result would cause a type of liability that is not only at odds with the purpose of limited liability in general, but also would be inconsistent with the 'existing legal rules' regarding parental liability that the Department of Labor would have courts apply." *Id*. (citations omitted). *Pearson* cautioned that the single employer rule, including its de facto control factor, "is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership." *Id*. at 503.

Plaintiffs argue that Defendants are a single employer both towards each other (D.I. 25 at 6–8) and towards Maple Mountain (*id.* at 9–10) because of the controlling ownership relationships alleged. But these are exactly the sorts of claims that *Pearson* instructs are outside the single employer rule and are inconsistent with the principles of limited liability and parental liability.

Plaintiffs similarly argue that the existence of ownership through a private equity structure plausibly pleads a "single employer" relationship. (*See* D.I. 25 at 9 (claiming, without citation, that "[i]t is not unusual to see private equity outfits, having bought a company (like Maple Mountain)

---

[1] All defined terms herein follow their meaning in Defendants' Opening Brief (D.I. 21).

exert thoroughgoing control over that company, directing both the big decisions and often the smaller ones too . . . . That is the common, if not near-universal, thing that such private equity outfits do")). Plaintiffs are wrong. There is no presumption in the law that a private equity firm constitutes a "single employer" with its portfolio company. Rather, Delaware courts regularly dismiss single employer WARN Act claims against private equity firms, even at the pleadings stage, even where common ownership and common management were adequately alleged. *In re HMR Foods Holding, LP*, 602 B.R. 855 (Bankr. D. Del. 2019); *In Re Consol. Bedding, Inc.*, 432 B.R. 115 (Bankr. D. Del. 2010); *In re AFA Inv., Inc.*, No. 12-11127 MFW, 2012 WL 6544945 (Bankr. D. Del. Dec. 14, 2012). In fact, as pointed out in the Opening Brief (D.I. 21 at 16–17, 19–20), Delaware courts have regularly reached the opposite conclusion, noting that where the alleged single employer is a private equity firm it *undermined* the plausibility of single employer liability.

Furthermore, Plaintiffs cite *Guippone v. BH S&B Holdings LLC,* 737 F.3d 221, 226 (2d Cir. 2013), but the Second Circuit there *affirmed* the trial court's dismissal, on a 12(b)(6) motion, of the WARN Act single employer claim against the private equity firm. Among other things, the trial court noted that a private equity structure similar to the one alleged here did not create "common ownership," the presence of overlapping directors did not allege de facto control ("courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary"), and "conclusory allegations that defendants collectively decided to engage in mass layoffs" were insufficient to state a claim (the allegations "fail[ed] to name any specific actions taken by specific defendants"). *Guippone v. BH S&B Holdings LLC*, No. 09-cv-1029 CM, 2010 WL 2077189, *4–6 (S.D.N.Y. May 18, 2010).

II.    **Single Employer Liability Is Not Imposed on Affiliates of a Single Employer**

As multiple courts have held, group pleading against affiliated entities is impermissible for single employer WARN Act claims and requires dismissal under Rules 8 and 12(b)(6). (D.I. 21 at

3

8–9). In opposition, Plaintiffs do not dispute that the Complaint attributes all conduct to undifferentiated "Defendants" or "Z Capital," without specifying what any particular defendant did. Plaintiffs also do not (and cannot) claim that Defendants are alter egos of one another.

Rather, Plaintiffs claim that the Complaint nonetheless properly names the twelve entities as defendants and groups them for its "single employer" allegations because "Defendants constituted a single employer among themselves." (D.I. 25 at 6–9) Plaintiffs do not explain what this means or cite authority supporting such a concept (the claim does not even appear in the Complaint). To the contrary, the single employer rule is a doctrine that, when the relevant standards are met, extends liability from the affiliate entity to its parent entity; it is not for sharing liability between various affiliates of that parent.

Even assuming, arguendo, that the single employer rule could be applied between affiliates of the alleged single employer, Plaintiffs' claims do not work. Plaintiffs argue that it is "plausible" based on the allegations that Mr. Zenni "controls" the "Parent Entities" and thereby all the Defendants. (*Id*. at 7–8) However, as explained above, these generalized allegations of control arising from ownership are not the sort of control necessary to allege single employer liability.[2] Further, according to Plaintiffs' theory, only the top-level entities, namely the "Parent Entities," would be the "single employer," not the eleven other defendants. And even then, that would mean that the "single employer" here is a holding company and/or a nonparty trust— a bizarre and implausible result unsupported by the alleged corporate relationships and common sense.

Plaintiffs also argue that they are permitted to name twelve different entities as defendants without factual support because they do not know which entities to sue. (D.I. 25 at 6–7) (claiming

---

[2] Plaintiffs also do not allege any "unity of personnel policies" between the entities or any "dependency of operations." (*See* D.I. 21 at 15, 19 (allegations of financial dependence is insufficient to allege this factor or de facto control)).

4

that "[t]he intricacies of the web of entanglement among the various entities, and how the Z Capital group used those various entities as shells and conduits, is a matter that is largely within the hidden knowledge of Defendants at this point"). However, Plaintiffs here are trying to have it both ways: they rely on Kane's declaration to include various entities as defendants and quote the declaration's explanation of the relationships between those defendants—but now claim to be ignorant of those relationships to justify their scattershot pleading of every affiliate entity as defendant.

That does not work. According to Kane's declaration and the Complaint, defendant Z Capital Group is an "alternative asset manager," defendant Z Capital Partners is its "private equity arm," defendant Zenni Holdings and the nonparty trust are Z Capital Group's owners, and the defendant Funds are the limited partners who invest the capital for the portfolio company investment but have no management role. (D.I. 1, ¶¶27(*a*)–(*k*); D.I. 22-3, ¶¶3–9) Plaintiffs offer no coherent explanation for why Zenni Holdings or the six Funds (or the W-2 entity Z Capital Management) could plausibly be considered a "single employer" of Maple Mountain based on their own allegations. According to the Complaint, these entities have no management function at any portfolio company, let alone have the routine control of and integration with Maple Mountain's operations that is necessary for single employer liability. And Plaintiffs do not dispute that common ownership and common directors, even if adequately alleged for these entities (they are not, *see infra*), is insufficient to plausibly allege single employer liability. (D.I. 21 at 20)

Plaintiffs cite only to *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 381 (S.D.N.Y. 2017) to suggest that there would be joint and several liability among the Defendants. However, *Garner* discusses only that a "direct" employer (here, Maple Mountain) and a WARN Act "single employer" would be considered joint tortfeasors. It contains no discussion of shared liability between two entities both alleged to be a "single employer" with the direct employer.

5

### III.  Mr. Zenni's Overlapping Directorship Does Not Plausibly Infer Liability

Plaintiffs argue that the Complaint adequately alleges that Defendants made the layoffs decision because it alleges that Mr. Zenni, allegedly a Maple Mountain board member and Maple Mountain's Managing Director "and/or" CEO, made the layoffs decision at a Maple Mountain board meeting. (D.I. 25 at 14–15) This is contrary to the law cited in the Opening Brief (D.I. 21 at 14), which Plaintiffs have failed to address, let alone distinguish from the facts alleged here. *HMR Foods*, *Consolidated Bedding, and AFA Investments* have all held that an allegation that a private equity firm's directors serve on its portfolio company's board and made the layoffs decision does not state a claim for single-employer liability—even where the Complaint alleges, without supporting facts, that those directors acted on behalf of the private equity firm.

As in *HMR Foods*, Mr. Zenni's alleged actions were "consistent with [his alleged] duties" at Maple Mountain "and, therefore, cannot support a plausible claim of control." *HMR Foods*, 602 B.R. at 875. The "allegations describe that [Mr. Zenni] took appropriate actions and made difficult decisions as is often necessary for a company's directors." *Id.* "Delaware law presumes that directors will act in accordance with their fiduciary duties, and a plaintiff must allege particularized facts creating a reasonable doubt to rebut the presumption at the pleading stage." *Id.* (citing *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048–49 (Del. 2004)). Thus, the Complaint lacks "factual allegations from which [a court] could infer that [Mr. Zenni's alleged] actions went beyond those typically taken by directors attempting to save a business or preserve value." *Id.*

Plaintiffs cite only a single unpublished, out-of-district decision, currently on appeal, where a trial court relied on a host of facts and circumstances absent here to establish single employer liability. *Chaney v. Vt. Bread Co.*, No. 2:21-cv-120, 2023 U.S. Dist. LEXIS 148066 (D. Vt. Aug. 23, 2023). For example, the court there found that, at the time of the affiliate's plant closures, the

6

affiliate had no directors and almost no upper management aside from the team that worked for and reported to the parent (the prior personnel all left when the parent took over the business a month earlier), and the only holdover officer refused to sign the WARN Act notices.

Accordingly, Plaintiffs' allegations fail to overcome the presumption that directors act solely in their official capacities, and thus do not plausibly allege single employer liability.

## IV.  The Complaint Is Fatally Insufficient Under the Five-Factor Test

In addressing the Third Circuit's five factors, Plaintiffs restate the allegations in the Complaint (which already groups its allegations by each factor) without addressing any of critical shortcomings pointed out in the Opening Brief.

As an initial matter, Plaintiffs insist that their allegations of a "sharing of administrative and purchasing services and commingled finances," "common personnel policies imposed by Z Capital," and "Z Capital made the decision that Maple Mountain would close" are "allegation[s] of fact to be taken as true" on its face, even without supporting factual content. (D.I. 25 at 11–13)

This is wrong. A complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79; *see also Smith v. Pallman*, 420 F. App'x 208, 214 (3d Cir. 2011) ("[Plaintiff]'s contention that the District Court should have permitted her to engage in discovery fails. Discovery is not required prior to dismissal.").

Additionally, the Complaint plead these allegations "upon information and belief." As Plaintiffs concede, such allegations cannot be "*boilerplate and conclusory*" and require "*factual allegations that make their theoretically viable claim plausible*." (D.I. 25 at 5 (emphasis in original) (quoting *McDermott v. Clondalkin Grp.*, *Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016)), *see also* D.I. 21 at 9–10) The allegations fail to meet this standard as well.

7

Delaware courts have disregarded similar WARN Act single employer allegations, even when not pled "upon information and belief," because the plaintiffs failed to allege factual material supporting these boilerplate and conclusory allegations. In fact, Plaintiffs' counsel in this action made a near identical argument to the one here to oppose the Rule 12(b)(6) motion under consideration in *HMR Foods* (*Plts' Br. in Opp.*, No. 16-51021 JTD, D.I. 78, at *3–7 (Bankr. D. Del. Jan. 12, 2018)), but the court there granted the motion anyway. The court there concluded that "Plaintiffs' allegations do not provide enough *facts* to support a plausible claim of de facto control." 602 B.R. at 873 (emphasis in original). *See also AFA Inv.*, 2012 WL 6544945, at *5 ("The Court finds that the allegations of the Complaint are bald assertions of the corresponding legal factors and do not provide a basis from which the Court can infer the high degree of integration required under *Pearson*."); *Consol. Bedding*, 432 B.R. at 122–23 (holding summary allegations were mere "legal conclusions or factually unsupported and therefore not entitled to an assumption of truth"). With these conclusory allegations stripped away, Plaintiffs fail to allege the five factors.

For "common ownership," Plaintiffs fail to plausibly make this allegation for any of the defendants other than the defendant Funds, the alleged owners of Maple Mountain. In Opposition, Plaintiffs repeat without explanation their impermissibly consistent allegations that, on the one hand, the Funds are owned by other affiliates of "Z Capital" but also that, on the other hand, the Funds are owned by outside investors, not the "Z Capital" affiliates, while the "Z Capital" affiliates act only as the general partners of the Funds. (D.I. 25 at 8, 10) Plaintiffs also make no effort to explain how, under their own allegations, defendants ZCG Consulting or Z Capital Management own Maple Mountain, even indirectly. (D.I. 21 at 12) Under *Pearson*, Plaintiff's inability to plead common ownership for the six non-Funds defendants "must be weighed heavily against a finding of liability" against them. 247 F.3d at 496.

For "common directors," Plaintiffs do not dispute that, even on a motion to dismiss, "the presence of only a single overlapping individual with overlapping management roles between the companies is not sufficient" for this factor. *Woolery v. Matlin Patterson Glob. Advisers, LLC*, C.A. No. 12-726-RGA, 2013 WL 1750429, at *5 (D. Del. Apr. 23, 2013). (D.I. 21 at 12) Rather, Plaintiffs rely on Mr. Oates' positions as trustee of the nonparty trust and Maple Mountain board member. (D.I. 25 at 11) However, Plaintiffs continue to ignore the fact that Mr. Oates is not alleged to be an officer, director, or have any management function at *any* defendant entity, as required under *Pearson* to allege that a defendant shares the "same" directorship. 247 F.3d at 498. Plaintiffs thus fail to allege this factor.

For "de facto control," Plaintiffs attempt to expand this factor as a sort of catch-all for all their other allegations. (D.I. 25 at 13–14) Not so. De facto control exists only when the parent "was the decisionmaker responsible for the employment practice giving rise to the litigation." *Pearson*, 247 F.3d at 503–04; *In re APA Transport*, 541 F.3d 233, 245 (3d Cir. 2008). As explained above, Plaintiffs offer no *factual* allegations beyond Mr. Zenni's role in the decision (which is insufficient, as explained above). The Complaint's allegation (¶27(*hh*)) that "[a]s shown in Kane's sworn declaration, Z Capital maintained sole control over all critical business decisions made on behalf of Maple Mountain" is not actually supported by the declaration and is otherwise conclusory. (D.I. 21 at 16) Plaintiffs thus fail to allege this factor.

For the remaining two factors, "unity of personnel policies" and "dependency of operations," Plaintiffs restate the Complaint's allegations without addressing any of the factual insufficiencies or caselaw raised in pages 16–20 of the Opening Brief. (D.I. 25 at 11–13) Plaintiffs thus fail to allege these factors as well.

### V. Plaintiffs' Alternative Request for Permission to Replead Should be Denied

Plaintiffs declined to exercise their right under Rule 15(b) to amend their Complaint in response to Defendants' motion. That right has since expired. Instead, Plaintiffs request, in a one-sentence footnote, that, to the extent that the Court dismisses the Complaint, it should do so without prejudice and with permission to replead. (D.I. 25 at 1 n.1)

The Court should deny that request. Plaintiffs do not even hint as to how they intend to overcome the numerous deficiencies in the Complaint. They do not offer any new or different allegations to support their claim. They do not even suggest that they have any. To the contrary, Plaintiffs argue that they do not have any more supporting facts to allege but hope that discovery may yield them. (D.I. 25 at 4–5) Under such circumstances, dismissal with prejudice is appropriate. *See Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 125–26 (3d Cir. 2010) (no abuse of discretion to deny leave to replead where plaintiff did not submit a proposed amended complaint or otherwise explain how they would plead any differently to correct the defects); *King ex rel. Cephalon Inc. v. Baldino*, 409 F. App'x 535, 539 (3d Cir. 2010) (same); *Kanter v. Barella*, 489 F.3d 170, 181–82 (3d Cir. 2007) (noting that futility alone is sufficient ground to deny leave to amend and affirming district court's denial of leave to amend because plaintiff offered no new facts to support his claim).

### CONCLUSION

For the foregoing reasons, the Complaint fails to state a claim under the WARN Act against the Defendants. The Court should dismiss the Complaint with prejudice under Rule 12(b)(6). In the alternative, the Court should dismiss as to all defendants for whom Plaintiffs allege only ownership or investment relationships and require Plaintiffs to file a more definite statement specifying the allegedly wrongful conduct of any remaining defendant.

Dated: December 10, 2025

**SMITH KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
David A. Jenkins (No. 932)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
daj@skjlaw.com
dat@skjlaw.com

**AMINI LLC**
Avery Samet
Charles Wollman
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 497-8278
asamet@aminillc.om
cwollman@aminillc.com

*Attorneys for Defendants*