**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REAGAN COX and MARIAH SPERRY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZENNI HOLDINGS, LLC; Z CAPITAL GROUP, LLC; Z CAPITAL MANAGEMENT, LLC; Z CAPITAL PARTNERS, LLC; Z CAPITAL PARTNERS GP II, L.P.; Z CAPITAL PARTNERS II-A, L.P.; Z CAPITAL PARTNERS II-B, L.P.; Z CAPITAL N-2L, L.L.C.; Z CAPITAL N-2L-D, L.L.C.; Z CAPITAL PARTNERS FUND HOLDINGS I, L.L.C.; Z CAPITAL PARTNERS II, L.P.; and ZCG CONSULTING, LLC,<br><br>Defendants. | ) | C.A. No. 25-973-JLH |

**MEMORANDUM ORDER**

Plaintiffs were employed by non-party Maple Mountain Enterprises, Inc. d/b/a Modere and Maple Mountain Group, Inc. d/b/a Modere (together, "Maple Mountain").[1] Maple Mountain shut down in April 2025, and Plaintiffs were laid off. Within days, Plaintiffs sued Maple Mountain in federal district court in Utah alleging that they had not been given advance notice of the layoffs, as required by the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"). In June 2025, Maple Mountain filed for bankruptcy, potentially leaving Plaintiffs without a source of satisfaction.

[1] Maple Mountain (a/k/a Modere) was a Utah-based multilevel marketing company selling consumer products.

Undeterred, Plaintiffs filed this suit two months later. This Complaint also alleges WARN Act violations, but this suit names as defendants certain private equity funds that owned Maple Mountain, as well as other entities associated with the private equity funds. Plaintiffs' theory of the case hinges on their ability to show that Defendants and Maple constitute a "single employer" under the law.

Pending before the Court is Defendants' Motion to Dismiss the Complaint for Failure to State a Claim. (D.I. 20.) Because I agree with Defendants that the Complaint fails to plausibly allege that any of the named Defendants was a single employer with Maple Mountain, I will GRANT the motion to dismiss.

1. I write for the parties and assume familiarity with the facts alleged in the Complaint. Plaintiffs are former employees of Maple Mountain. (D.I. 1 ¶ 1.) Defendants are alleged to be various Delaware corporations affiliated with James Zenni ("Mr. Zenni"). (*Id.* ¶ 27(a).) Mr. Zenni is alleged to be the sole member of Defendant Zenni Holdings, LLC and the sole creator of non-party Zenni Family 2018 GST Trust (collectively referred to in the Complaint as the "Parent Entities"). (*Id.*) The Parent Entities are alleged to own Defendant Z Capital Group, LLC. (*Id.* ¶ 27(b).) Z Capital Group, LLC is alleged to own Defendant Z Capital Partners, LLC. (*Id.* ¶ 27(c).) Z Capital Group, LLC and Zenni Holdings, LLC are alleged to own Defendant Z Capital Management, LLC and Defendant Z Capital Partners GP II, L.P. (*Id.* ¶ 27(d).) Z Capital Partners GP II, L.P. and Z Capital Partners, LLC are alleged to own seven entities named as Defendants, six of which are alleged to own Maple Mountain. (*Id.* ¶ 27(f), (g).) The Complaint then goes on to collectively refer to all Defendants as "Z Capital." (*Id.* ¶ 1.)

2. On or about April 11, 2025, Plaintiffs and approximately 190 other Maple Mountain employees were terminated. (*Id.* ¶¶ 1, 11.) Plaintiffs allege that their termination violated the

WARN Act's requirement that employees be given 60 days' advance written notice. (*Id.* ¶¶ 1, 27.) Plaintiffs allege that Defendants are liable for the WARN Act violations because "Defendants constituted a 'single employer' of the Plaintiffs." (*Id.* ¶ 27.)

3. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The possibility of relief is not enough. *Id.* In determining the sufficiency of the complaint, the court must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

4. In general, the WARN Act requires that an "employer" provide 60 days' notice to workers before a plant closing or mass layoff. 29 U.S.C. § 2102(a); *see also Pearson v. Component Tech. Corp.*, 247 F.3d 471, 476 (3d Cir. 2001). The WARN Act defines an "employer" as "any business enterprise that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1). The question here is whether the Complaint plausibly alleges that one or more of Defendants were Plaintiffs' "employer" at the time of the layoff. It does not.

5. At first blush, it would seem atypical to hold private equity investors responsible for WARN Act violations committed by their portfolio companies. After all, "[t]he corporate form

was created to allow shareholders to invest without incurring personal liability for the acts of the corporation." *Pearson*, 247 F.3d at 484. That said, Third Circuit precedent mandates that I consider a "nonexhaustive list" of five factors in assessing Plaintiffs' contention that Defendants were a "single employer" with Maple Mountain within the meaning of the WARN Act: "(1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) the dependency of operations." *Id.* at 495 (citing 20 C.F.R. § 639.3(a)(2)). The Third Circuit characterizes the "application" of those factors as "a 'factual' question rather than a 'legal' one." *Id.* at 496. But summary judgment and/or dismissal is appropriate—even where some of the factors favor plaintiff—where the court determines that the evidence (in the case of a motion for summary judgment) or plausible allegations (in the case of a motion to dismiss) fail to suggest "the high degree of integration" necessary in order to be considered a single employer for WARN Act purposes. *Id.* at 505 (affirming grant of summary judgment of no liability); *see also In re HMR Foods Holding*, LP, 602 B.R. 855, 876 (Bankr. D. Del. 2019) (granting motion to dismiss); *In re AFA Inv., Inc.*, No. 12-11127, 2012 WL 6544945, at *5 (Bankr. D. Del. Dec. 14, 2012) (granting motion to dismiss); *In re Consol. Bedding, Inc.*, 432 B.R. 115, 124 (Bankr. D. Del. 2010) (granting motion to dismiss).

6. **Factors (1) and (2): Common Ownership and Common Directors and/or Officers.** I'll assume that the Complaint plausibly alleges ownership of Maple Mountain by "Z Capital" (as defined in the Complaint) and common directors and/or officers, including Mr. Zenni.[2]

---

[2] I assume for the sake of argument only that Defendants constitute a single entity that owns Maple Mountain, although I don't think the Complaint plausibly alleges so. It appears to be Plaintiffs' position that because the Parent Entities own the affiliated Z-entities, they all constitute one entity for purposes of the single-employer doctrine. But it's well established that "mere ownership of a subsidiary does not justify the imposition of liability on the parent." *Pearson*, 247

But "the first and second factors, common ownership and common directors and/or officers, are not sufficient to establish that two entities are a 'single employer.'" *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 243 (3d Cir. 2008), as amended (Oct. 27, 2008); *see also In re HMR Foods*, 602 B.R. at 868 ("[T]he first two factors alone do not establish that the related entities acted as a single employer.").

7. Before assessing the remaining factors, I pause for a disclaimer. The remaining factors purport to be fact-intensive, but discussion of them in the case law (for the most part) seems to me to be merely repackaging the ultimate conclusion as an ostensibly subsidiary inquiry. For example, in assessing factor (4), the Third Circuit instructs courts to focus "on whether the companies actually functioned as a single entity with regard to its relationships with employees." *Pearson*, 247 F.3d at 499. But that formulation offers little guidance, as it merely restates the ultimate question whether the companies should be considered a single entity. Likewise, in assessing factor (5), the Third Circuit has explained that even though the inquiry is factual, and even though the distinction between a parent company's decision to keep funding a company (or call a loan) and a decision to shut down a company "is a fine one" and may be "close" in a particular case, courts may rule as a matter of law for a defendant where the subsidiary "has retained the ultimate responsibility for keeping the company active"—as opposed to a "situation[] in which a parent[] has ultimately assumed responsibility for the continuing viability of a company (thus incurring liability for WARN Act violations)." *Id.* at 504–05. In my view, this too offers little by

F.3d at 484; *see also id.* at 494 ("[B]y itself, ownership—and even ownership coupled with common management—is not a sufficient basis for liability . . . ."). Nevertheless, because the Complaint fails to plausibly allege that Defendants are a single employer with Maple, I don't analyze the issue further.

way in terms of a workable standard, instead defining the inquiry by reference to the conclusion. With those limitations in mind, I proceed to assess the remaining factors.

8. **Factor (3): De Facto Exercise of Control.** This factor considers "whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for the litigation." *In re Jevic Holding Corp.*, 526 B.R. 547, 553 (D. Del. 2014) (quoting *Pearson*, 247 F.3d at 491). According to the Third Circuit, if the exercise of control is "particularly striking," liability may be warranted even if the other factors are not present. *Pearson*, 247 F.3d at 504. On the other hand, a "parent's exercise of control pursuant to the ordinary incidents of stock ownership" will not support liability. *Id.* at 503.

9. Plaintiffs allege the following, in relevant part, in support of their assertion that Defendants specifically directed the closure of Maple Mountain and layoff of employees: (i) on April 8, 2025, Nate Frazier, president of Maple Mountain, called a board meeting for April 9, 2025that included himself, another board member, and Mr. Zenni—who is alleged to be the Managing Director and/or CEO of Maple Mountain; (ii) the board met to discuss "the cash shortfall of Maple Mountain and to appoint a 'Special Committee'"; (iii) Mr. Zenni "informed the other members that Z Capital would no longer be funding Maple Mountain and directed the Special Committee to terminate all of the employees"; (iv) that, upon "information and belief, the decision to shut down the Facilities without providing proper WARN notice was made by Z Capital on behalf of Maple Mountain, as a single employer . . . ."; and (v) that, on or about April 11, 2025, "Defendants, as a single employer with Maple Mountain, ordered a Mass Layoff and/or a Plant Closing of the Facilities as those terms are defined by" the WARN Act. (D.I. 1 ¶¶ 27(ii)–(nn), 28.)

10. Those allegations do not provide enough facts to support a plausible claim of de facto control. To begin with, the allegations that it was Defendants who made the decision to shut

down Maple Mountain as a single employer under the WARN Act are conclusory and therefore not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 668 (complaint will not suffice "if it tenders naked assertions devoid of further factual enhancement" (cleaned up).) The presence of Mr. Zenni on Maple Mountain's board does not, on its own, demonstrate that Z Capital exerted de facto control over Maple Mountain. And a parent corporation is entitled to protect its own assets by deciding not to keep funding its subsidiary. *See, e.g.*, *Pearson*, 247 F.3d at 505 (granting summary judgment to parent company because parent's decision to "cut off its funding" was not a "de facto exercise of control"); *In re HMR Foods*, 602 B.R. at 875 ("Decisions analyzing single employer liability under the WARN Act have recognized that lenders and parent corporations may take steps to protect their investments without incurring liability."). The Complaint acknowledges that Maple Mountain was suffering from a cash shortfall, and there are no factual allegations making it plausible that its directors' actions went beyond those typically taken by directors attempting to preserve value. Nor are there any other factual allegations plausibly suggesting that Z Capital was doing anything other than exercising control "pursuant to the ordinary incidents of stock ownership." *Pearson*, 247 F.3d at 503 (stating that "the 'de facto exercise of control' factor is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership"). This factor supports Defendants.

11. **Factor (4): Unity of Personnel Policies Emanating from a Common Source**. When analyzing this factor, courts are to consider "whether the two companies in question engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping" with respect to their "day-to-day operations." *In re APA Transport Corp.*, 541 F.3d at 245; *Pearson*, 247 F.3d at 501. This factor "require[s] the factfinder to focus the inquiry less on the hierarchical relationship between the companies . . . than on whether the companies actually functioned as a

single entity with regard to its relationships with employees." *In re Jevic*, 526 B.R. at 554 (quoting *Pearson*, 247 F.3d at 499). The Complaint sets forth the following non-conclusory allegations in support of Plaintiffs' assertion that Maple Mountain and Defendants were united in their personnel policies: (i) that Maple Mountain was required to submit new hire requests for certain management/executive positions to Z Capital and Mr. Zenni before making any offers; (ii) that Z Capital implemented a "total hiring freeze" at Maple Mountain in March 2025; (iii) that, starting in February 2025, no insurance plans or benefit plans could be purchased, renewed, or cancelled without prior approval by Z Capital; and (iv) that "[u]pon information and belief, the decision to order a Mass Layoff . . . at Maple Mountain . . . was made by Z Capital." (D.I. 1 ¶ 27(x)–(ff).)

12. Those allegations are insufficient to plausibly allege a unity of personnel policies. The allegation that Z Capital made the decision to order the mass layoff is conclusory and not entitled to a presumption of truth; regardless, such allegations are "more appropriately considered as part of the 'de facto exercise of control' factor," discussed above. *Pearson*, 247 F.3d at 500. That Z Capital may have controlled the hiring of management positions "simply is not enough to find a 'unity' of personnel 'policy'" as a matter of law. *Id.*; *In re HMR Foods*, 602 B.R. at 869 (assessing *Pearson* and concluding on a motion to dismiss that allegations of the defendants' "hiring, firing and negotiating terms of employment for [] executive management positions" were insufficient to plausibly allege a unity of personnel policies); *see also Pearson*, 247 F.3d at 501 ("[T]he mere fact that the subsidiary's chain-of-command ultimately results in the top officers of the subsidiary reporting to the parent corporation does not establish the kind of day-to-day control necessary to establish an interrelation of operations."); *cf. In re APA Transport*, 541 F.3d at 245 (evidence that "the two companies did share . . . some employee monitoring functions" did not equate to "evidence that the two companies 'actually functioned as a single entity' with regard to

their respective employees"). The Complaint does not allege any facts indicating any other centralized personnel policies. And the fact that Z Capital implemented a hiring freeze at Maple Mountain in 2025—one month before it ordered a mass layoff due to its cashflow problem—is insufficient, absent plausible allegations that Maple Mountain and Z Capital "actually functioned as a single entity with regard to its relationships with employees" on a "day-to-day" basis. *Pearson*, 247 F.3d at 499. This factor weighs in favor of Defendants.

13. **Factor (5): Dependency of Operations**. To determine whether two companies are "dependent on one another," the Third Circuit directs courts to examine the "existence of arrangements such as the sharing of administrative or purchasing services, interchanges of employees or equipment, and commingled finances." *In re APA Transport*, 541 F.3d at 245. Plaintiffs allege the following in support of their assertion that Maple and Defendants were operationally dependent on one another: (i) Z Capital told Maple Mountain that it was required to work through a subsidiary of Z Capital for technology and digital solutions; (ii) Maple Mountain was dependent on Z Capital Group, LLC and Zenni Holdings, LLC for daily operating funds; and (iii) "Z Capital took out a loan on behalf of Maple Mountain but did not use all the funds for Maple Mountain." (D.I. 1 ¶ 27(p)–(v)).

14. Those allegations are insufficient to plausibly allege a dependency of operations. As to the alleged directive from Z Capital that Maple Mountain use a specific technology company, that is simply a parent corporation's "exercise of its ordinary powers of ownership." *Pearson*, 247 F.3d at 501 (listing the power to set general policies as an example of an ordinary power of ownership). There are no allegations plausibly suggesting that Z Capital was dependent on Maple Mountain to continue operating. (D.I. 21 at 19–20.) And, when it comes to funding, dependency of operations comes from the commingling of finances, not the funding of one entity by another.

*See Pearson*, 247 F.3d at 503 (explaining that the "mere fact" that loans from the parent company to the subsidiary were necessary for the subsidiary's operations cannot establish the dependency of operations factor); *In re AFA Inv.*, 2012 WL 6544945, at *5. The Complaint alleges that Maple Mountain and Defendants commingled finances because of a loan Z Capital took out "on behalf of Maple Mountain," but the Complaint provides no further detail about the loan or an explanation of how it was "on behalf of Maple Mountain." If Defendants took out this unidentified loan, it was not commingling for Defendants to control those funds. The Complaint does not allege any other facts plausibly suggesting a dependency of operations. This factor favors Defendants.

15. At best, the Complaint plausibly alleges facts satisfying the first two factors of the five factor test. But it fails to plausibly allege the other three. The first two factors are not enough, as a matter of law, to establish that Defendants were a single employer with Maple Mountain. *In re APA Transp.*, 541 F.3d at 243 ("The first and second factors, common ownership and common directors and/or officers, are not sufficient to establish that two entities are a 'single employer.'"). The Complaint thus fails to state a claim against Defendants for violation of the WARN Act.

16. Plaintiffs say that "[d]iscovery will reveal the details" needed to prove that Defendants and Maple Mountain were a single employer that employed Plaintiffs (D.I. 25 at 8), but Plaintiffs cannot obtain discovery without stating a plausible claim.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss the Complaint for Failure to State a Claim (D.I. 20) is GRANTED. Plaintiffs are granted leave to file an amended complaint within 21 days.

Dated: October 30, 2026

The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE